IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER T. PHELPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-cv-0307-MJR |
| ) | |
| GARY TYNER, WILLIAM WEIR, ) | |
| JOSHUA DUNNIGAN and MARILYN ) | |
| LYNN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM and ORDER**

**REAGAN, District Judge:**

### I. Introduction

On April 24, 2007, Christopher Phelps filed suit against Gary Tyner, William Weir, Joshua Dunnigan and Marilyn Lynn, alleging that his constitutional rights were violated while he was a pretrial detainee at the Williamson County Jail in Marion, Illinois.[1] The action now proceeds on Phelps's second amended complaint (Doc. 47). The Court has broken down Phelps's Complaint into two general allegations - excessive force and denial of medical care.

Pending before the Court are Gary Tyner's motion to dismiss (Doc. 101) and Marilyn Lynn's motion for summary judgment (Doc. 111). Only Lynn's motion for summary judgment is opposed (Doc. 115).

---

[1] Other defendants were dismissed by amended complaint and on motion to dismiss. *See* Docs. 9, 96.

1

## II. Analysis

### A. Defendant Tyner

In his motion to dismiss, Tyner challenges the sufficiency of Phelps's § 1983 claim pursuant to Rule 12(b)(6). Because Phelps is proceeding without representation, his allegations receive a liberal interpretation. Well-pleaded facts are accepted as true, and all inferences are drawn in his favor. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Phelps must allege enough facts to suggest that there are plausible grounds for relief. **Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)**.

Phelps's claim against Tyner arose on June 17, 2006. On that date, Phelps showered five to ten minutes before the scheduled 5:30 count. He was still in the shower when an announcement was made for inmates to lock up. When two jailers entered the cell block to perform the count, Phelps was returning to his cell. When one jailer instructed Phelps about jail procedure, Phelps uttered a verbal response. The jailer allegedly became aggravated and reacted by initiating a malicious physical attack on Phelps, assisted by the second jailer.

The allegations do not suggest that Tyner was present during or participated in the alleged hostile assault. Tyner is identified as a jail captain, which suggests that Phelps may be able to show that he supervised the two jailers involved in the incident. Phelps claims that Tyner knew these particular jail employees had used too much force against outspoken inmates in the past and made no effort to discipline them or otherwise correct their improper behavior. Tyner's failure to take disciplinary action against the jailers for past misconduct is identified as a proximate cause of Phelps's injuries.

Tyner argues that the allegations against him do not support liability under § 1983 because they do not show his personal involvement in a constitutional deprivation. In order to state a § 1983 claim, Phelps must describe conduct that deprived him of rights, privileges or immunities guaranteed by the Constitution or laws of the United States. ***Larsen v. Beloit*, 130 F.3d 1278, 1282 (7th Cir. 1997)**. Because there is no liability on a theory of *respondeat superior*, the allegations must suggest that a supervisor knew about the offensive conduct and facilitated it, approved it, condoned it or turned a blind eye. ***Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)**. "Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." ***Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)**. A supervisor who fails to detect and prevent subordinate misconduct is merely negligent, while a supervisor who knows about and participates in the conduct can be said to have caused the deprivation. ***Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000)**.

Giving the *pro se* allegations a liberal interpretation, Phelps can show that Tyner (1) knew these two jailers had used too much force against other inmates at some point in the past, (2) was in a position to discipline the jailers for their improper conduct, and (3) took no steps to discipline the jailers or otherwise prevent them from using too much force against inmates in the future. Phelps can also show that the jailers used too much force when they caused his injuries on June 17, 2006. While these allegations could support a claim of negligence, they do not support a claim of deliberate indifference. In particular, the allegations do not suggest that Tyner actually knew the jailers intended to attack and harm Phelps and authorized or condoned their actions. At most, Phelps can demonstrate that Tyner should have anticipated a future hostile assault. Yet, the simple failure to anticipate and prevent harm does not rise to the level of a constitutional

3

deprivation. ***Daniels v. Williams*, 474 U.S. 327, 331-32 (1986)**. For these reasons, the Court will grant Tyner's motion to dismiss (Doc. 101).

**B.     Defendant Lynn**

Defendant Lynn, a nurse, seeks judgment in her favor pursuant to Rule 56, claiming that no evidence supports a finding that she was deliberately indifferent to a serious medical need. Phelps claims that Lynn saw him on Monday, June 19, 2006, and heard him describe an injury to his arm. He submits that she performed a cursory examination of his bruised and swollen arm, and sent him back to his cell. Phelps contends that Lynn refused to order a diaganostic test that might have revealed a fracture and that she canceled his doctor appointment. Phelps also alleges that Lynn failed to provide him with any treatment for his painful arm injury (Doc. 47, pp. 7-10).

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. P. 56(c);** *see also Celotex Corp. v. Catrett*, **477 U.S. 317, 322-23 (1986)**. The facts resented are construed in the light most favorable to the non-moving party and all reasonable and justifiable inferences are drawn in favor of that party. *See **Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)**. To survive a summary judgment motion, the opposing party must set forth specific facts showing that there is a genuine issue for trial. ***Vanasco v. Nat'l-Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 1998)**.

The relevant evidence shows that Phelps was confined at the Williamson County Jail on Saturday, June 17, 2006. He suffered some type of painful injury after his left arm was "slammed in the door." Early the following morning, Phelps told Correctional Officer Gary Ladner

4

that his left arm was "broken and was going numb." Ladner wrote a memo, directed to the administration, describing Phelps's complaint. He also provided Phelps with a medical request form. Phelps completed the form without describing any arm ailment.

On Monday, June 19, 2006, Lynn evaluated Phelps's condition. She felt Phelps's left forearm and noted indentations. She formed the impression that something was wrong but advised Phelps that his arm would be "okay." Phelps mentioned that he was scheduled to see a doctor for another ailment and advised Lynn that he would "take it up with the doctor on the next shift."

On June 23, 2006, after Phelps was transferred to the Illinois Department of Corrections, he was interviewed regarding his medical history. The interviewer assessed right arm pain and noted Phelps's explanation that his right forearm had been slammed in a door. A treatment plan was made, which consisted of routine physical and mental examinations.[2] On June 29, 2006, an initial evaluation of Phelps's mental status was performed by Dr. James Nielsen through a tele-medicine consultation. Dr. Nielsen evaluated Phelps's mental ailments without describing or evaluating any physical ailment.

In order to establish a constitutional deprivation in a case involving medical care, a plaintiff must show two things: that he had a serious medical need and that the defendant was deliberately indifferent to that serious medical need. ***Estelle v. Gamble*, 429 U.S. 97 (1976)**. A medical need is objectively serious if it has been diagnosed by a physician as requiring treatment

---

[2] The Court has extracted relevant facts from an extensive recitation of events, most of which have no relevance to the claim at issue. At Phelps's request, the Court has also consulted exhibits submitted with Document No. 76 in related litigation, *Phelps v. Tyner,* Case No. 07-290-MJR (S.D.Ill.).

or is so obvious that even a lay person would easily recognize the need for medical attention. ***Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000)**. The subjective element of the claim - deliberate indifference - may be inferred when a medical professional's decision amounts to a substantial departure from the accepted standard of care. ***Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996)**. Medical negligence does not suffice to state a cognizable claim under § 1983. ***Estelle*, 429 U.S. at 104**.

Lynn's first argument is that she was not involved in providing any care or treatment to Phelps after June 14, 2006, when she attempted, without success, to evaluate his complaint regarding lymph node pain. This position is supported by Lynn's affidavit but does not reflect Phelps's version of events. On summary judgment, the Court must view the facts in Phelps's favor. Accordingly, this argument lacks merit.

Lynn also argues that the evidence does not reveal a serious injury to Phelps's arm. She points to the records prepared by Dr. Neilsen on June 29, 2006. Phelps responds that his complaint of arm pain was noted in the memo prepared by Ladner as well as the record prepared on June 23, 2006. The Court is unable to glean facts from either document supporting any inference that Phelps had (or that Lynn was aware of) a serious need for medical treatment of an injury to his right or left arm on June 19, 2006. Furthermore, the evidence does not permit a finding that Lynn disregarded an excessive risk of harm when she did not arrange a diagnostic test after Phelps divulged his intention to consult with a doctor on the next shift. As a result, Lynn is entitled to judgment in her favor.

### III.   Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant Gary Tyner's motion to

dismiss (Doc. 101) and **GRANTS** Defendant Marilyn Lynn's motion for summary judgment (Doc. 111). This action as to both Tyner and Lynn is **DISMISSED** with prejudice. Judgment shall enter at the conclusion of the case. The case will proceed to trial on the remaining § 1983 claims against Defendants William Weir and Joshua Dunnigan.

**IT IS SO ORDERED.**

**DATED this 20th day of January, 2010**

**s/Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**